UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DOUGLAS KEITH WARREN,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:17-cv-01977-ACA |
| } | |
| **COOSA COUNTY BOARD OF** } | |
| **EDUCATION, et al.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION AND ORDER

In this employment discrimination case, plaintiff Douglas Keith Warren asserts various claims against the defendants arising out of his termination as a Special Education teacher and coach at Central High School in Coosa County, Alabama. Mr. Warren alleges that the defendants discriminated against him because of his gender and race, violated his Fourteenth Amendment due process rights, and defamed him.

The court previously dismissed certain claims from the initial complaint and granted plaintiff leave to amend others. (Doc. 14, Coogler, J.). Defendants deny all allegations and move to dismiss part of Mr. Warren's claims. The parties have

1

fully briefed the motion. (Doc. 18; Doc. 28; Doc. 29). For the reasons explained below, the court **DENIES** in part and **GRANTS** in part the motion.

I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss a complaint when the complaint's allegations fail to state a claim upon which relief can be granted. On such a motion, the "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But it need not contain detailed factual allegations. *Twombly*, 550 U.S. at 555.

Regarding plaintiff's procedural due process claim, the standard for this court's review is decided. "For nearly a quarter century, the law of this circuit has been that 'the presence of a satisfactory state remedy mandates that we find that no procedural due process violation occurred.'" *McKinney*, 20 F.3d at 1564. Thus, "[i]t is well-settled that a constitutional violation is actionable under § 1983 only when the state refuses to provide a process sufficient to remedy the procedural deprivation." *Ingalls v. U.S. Space and Rocket Center*, 679 F. App'x. 935, 943 (11th Cir. 2017) (citing *Reams v. Irvin*, 561 F.3d 1258, 1266 (11th Cir. 2009)).

## II. BACKGROUND

At this stage, the court must accept the complaint's factual allegations as true and construe them favorably to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.,* 685 F.3d 1261, 1265 (11th Cir. 2012). Taken in a favorable light, Mr. Warren, a white male, alleges that the Coosa County Board of Education ("Board") hired him as a special education teacher at Central High School on August 22, 2015. (Doc. 16 at ¶¶ 8-9). In addition to teaching, Mr. Warren coached the girls' junior varsity softball team and was the assistant coach for the varsity girls' softball team during the 2015-2016 school year. (*Id.* at ¶12). Rebecca Stallworth, Central's African-American female assistant principal, head-coached the varsity girls' softball team, but Mr. Warren performed most of the varsity coaching responsibilities. (Doc. 16 at ¶ 12).

On April 20, 2016, Mr. Warren learned that the Board was not going to renew his contract at the end of the school year. The non-renewal was "without cause," but the Board's Special Education Coordinator confirmed that the decision "was not a performance-based decision." (Doc. 16 at ¶ 13). Then, in early May 2016, Central High School Principal, defendant Bradley Delynn Bouldin, relieved Mr. Warren of his softball coaching duties. (*Id.* at ¶12).

On May 4, 2016, Principal Bouldin and former Superintendent Dennis Sanford, met with Mr. Warren. (Doc. 16 at ¶ 15). They discussed a March 2016

conversation between Mr. Warren and Principal Bouldin. (*Id.*). During that prior conversation, Principal Bouldin shared that his son was having difficulties taking standardized tests. (Doc. 16 at ¶ 16). To empathize, Mr. Warren told Principal Bouldin that, in the past, he too had trouble with standardized tests. (*Id.*). He recalled that he once considered, but did not do so, taking the Praxis exam out of the testing room.[1] (*Id.* at ¶ 15). When later asked about the March 2016 conversation, Mr. Warren explained the context of the discussion and reiterated that he never took any test out of the room. (Doc. 16 at ¶ 16). Mr. Sanford "indicated that he believed" Mr. Warren's explanation. (*Id.*). But eight days later, Mr. Warren was placed on administrative leave until the end of the school year and escorted off the school property by a police officer. (Doc. 16 at ¶¶ 16-17).

After he was placed on leave, a "notice of misconduct" appeared on Mr. Warren's Teacher Certification and Education Portal ("TCERT"). (Doc. 16 at ¶ 18). Mr. Warren alleges that principal Bouldin and superintendant Sanford made the misconduct report "knowing that the circumstances pertaining to the purported misconduct (the Praxis exam) had occurred more than seven years earlier" and that Mr. Warren had "specifically denied" the misconduct (taking the test outside the

---

[1] The Praxis® tests measure the academic skills and subject-specific content knowledge needed for teaching. The Praxis tests are taken by individuals entering the teaching profession as part of the certification process required by many states and professional licensing organizations.

4

room). (*Id.* at ¶ 19). Mr. Warren also alleges false allegations were published about him in State Department of Education certification files. (*Id.* at ¶ 23).

Because of the "notice of misconduct," Mr. Warren was not hired for other positions for which he applied. (Doc. 16 at ¶ 20). And because he was a probationary, non-tenured employee, Mr. Warren alleges that he had no right or opportunity for a hearing regarding his termination. (*Id.* at ¶ 24).

Based on these facts, Mr. Warren filed his amended complaint asserting the following claims: (1) 42 U.S.C. § 1981 via 42 U.S.C. § 1983 race discrimination against the Board and Messrs. Bouldin and Sanford in their individual capacities; (2) Title VII gender discrimination against the Board; (3) 42 U.S.C. § 1983 due process liberty interest against the Board; and (4) state law defamation against Mr. Bouldin and Mr. Sanford in their individual capacities. The defendants move to dismiss Mr. Warren's claim for lost wages as to future coaching supplements and his § 1983 due process claim against the Board.[2] (Doc. 18; Doc. 29).

## III. DISCUSSION

### A. Claim for Lost Coaching Supplement Wages

As relief for Title VII gender discrimination, plaintiff's amended complaint demands, among other things, compensatory damages for loss of wages, loss of

---

[2] The defendants originally asked the court to dismiss Mr. Warren's § 1981 via § 1983 race discrimination claim. (Doc. 18 at 5-6). They have withdrawn that argument. (Doc. 29 at 1).

5

benefits, mental anguish, embarrassment, and emotional distress. (Doc. 16). The Board seeks to dismiss plaintiff's lost wages claim to the extent it includes "any coaching supplement he received while employed by the Board." (Doc. 18 at 7). For the reasons below, the court **DENIES** defendants' motion to dismiss any monetary claim for coaching supplements in Count II of the amended complaint.

A plaintiff may recover compensatory damages under Title VII for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. *See* 42 U.S.C. § 1981a (b)(3). And "[o]nce liability has been found, the district court has a great deal of discretion in deciding the level of damages to be awarded." *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985). Moreover, "in addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000) (citing *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1528 (11th Cir.1991)). Here, Mr. Warren alleges "past and future pecuniary losses" and seeks compensatory damages for "loss of wages, loss of benefits, mental anguish, embarrassment, emotional distress." (Doc. 16 at 13). Mr. Warren also claims that he is "entitled to plead for his lost supplemental coaching pay as part of his back pay, front pay, and/or as compensatory damages under Title VII and §1981." (Doc. 28 at 6).

Defendants argue that supplemental coaching pay is not a "loss or reduction in compensation" under Alabama law and, therefore, any demand for lost wages associated with any coaching supplement is due to be dismissed. (Doc. 18 at 7-8). Defendants' argument derives from Alabama tenure law. (Doc. 18 at 7-8). Under section 16-24C-4(3)(b) of the Alabama Code, which concerns teacher tenure, supplemental employment, like coaching, cannot be used to attain tenure or nonprobationary status. Ala. Code § 16-24C-4(3)(b). And the defendants argue, the loss of supplemental income (from supplemental employment) does not constitute a reduction in compensation to trigger "more extensive due process requirements." (Doc. 18 at 14). On these two points, the defendants assert that Mr. Warren's coaching supplements are not recoverable as lost wages for a Title VII violation. It's an argument that requires an inferential step, or two. And it assumes the propriety of state tenure law as limiting damages for violation of a federal statute, a proposition for which the defendants cite no authority. In the absence of binding authority that expressly proscribes the recovery of coaching supplements as a component of front pay, back pay, or compensatory damages under Title VII, however, the court will not, on a motion dismiss, restrict plaintiff from pleading his damages.

Mr. Warren states a plausible Title VII claim for which front pay, back pay, and/or compensatory damages may be awarded. Accordingly, the court **DENIES**

the defendants' motion to dismiss the monetary claim in Count II of the amended complaint for coaching supplements.

**B.     § 1983 Due Process Claim**

Mr. Warren alleges his Fourteenth Amendment rights were violated when the Board, in connection with his termination, published a false and stigmatizing statement in his personnel files and Alabama State Department of Education records. (Doc. 16 at 34). It is a claim for reputational damage. (*Id.*). In order for the claim to give rise to a procedural due process violation that is actionable under section 1983, however, Mr. Warren must show that "(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) [was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000) (internal quotation marks and citation omitted). The court previously held that Mr. Warren has pled facts sufficient to satisfy five of the factors. (Doc. 14 at 9, Coogler, J.). Mr. Warren's initial complaint alleged that after he was terminated there was no "post-stigmatization opportunity [for him] to clear his name" and that the "publications were made [by the defendants] without meaningful opportunity for name clearing by the Plaintiff." (Doc. 1 at 14-15). However, no allegations were made about the insufficiency or absence of state remedies "to resolve [the Board's] not supplying him with such a hearing." (Doc.

8

14 at 10, Coogler, J.). Accordingly, the court dismissed the Fourteenth Amendment claim with leave to amend. (Doc. 14 at 12, Coogler, J,).

As amended, the complaint now alleges a "complete lack of an adequate state remedy for a hearing" because Mr. Warren was a "probationary, non-tenured employee educator in the state of Alabama" and, as such, "had no right nor opportunity for a hearing." (Doc. 16 at 14). The issue before the court is "whether adequate procedures were available to Plaintiff to protect his right not to be deprived of his liberty interest in his reputation by state action without the opportunity for a name-clearing hearing." *Cotton*, 216 F.3d at 1331. If adequate state remedies were available "but the plaintiff failed to take advantage of them, then plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994)).

In dismissing plaintiff's unamended §1983 claim, Judge Coogler found that "Warren had both administrative remedies and state court remedies available to him and his failure to allege that these remedies were deficient causes his § 1983 claim to fail." (Doc. 14 at 12). Plaintiff amended his complaint, but not to allege that his administrative and state court remedies were deficient; rather, he alleges a complete lack of remedy – claiming that as a "probationary, non-tenured employee educator in the state of Alabama [he] had no right nor opportunity for a hearing"

9

under §16-24C-5 of the Alabama Code, the *Students First Act.* (Doc. 16 at ¶ 36). This allegation assumes too much. It assumes that because plaintiff was ineligible for a hearing under the *Students First Act* other remedies were likewise foreclosed. But whether plaintiff's non-tenured status deprived him from a hearing under the *Students First Act* only speaks to the unavailability of one remedy, under one statute. It does not suggest the unavailability of *any* remedy. And plaintiff cites no authority to persuade this court that it should read the *Students First Act* so broadly as eradicating alternative remedies.

Defendants contend that "[f]ollowing his notification that information on his misconduct was placed in his personnel file, the plaintiff had the option of seeking a hearing in front of the Board to request that such information be removed." (Doc. 29 at 3). They also assert that "following his notification that information on his misconduct was provided to the Alabama State Department of Education, the plaintiff had the option of seeking a hearing with the State Department of Education to request that such information be removed." (Doc. 29 at 3-4). Plaintiff does not dispute the availability of these options, nor allege their insufficiency; instead, he only alleges that because of his non-tenured status he had no right nor opportunity for a hearing under the *Students First Act.* However, the lack of a hearing opportunity under that statute does constitute a complete lack of other administrative and state law remedies. Because it is "only when the state

refuses to provide a process sufficient to remedy the procedural deprivation" that a constitutional violation is actionable under §1983, plaintiff has failed to state a claim. *McKinney,* 20 F.3d at 1557. Accordingly, the defendants' motion to dismiss is **GRANTED** with respect to Count III of the amended complaint.

## IV. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss the monetary claim in Count II of the amended complaint for coaching supplements is **DENIED**. The defendants' motion to dismiss Count III of the amended complaint is **GRANTED.**

**DONE** and **ORDERED** this November 15, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE