## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOUGLAS KEITH WARREN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:17-cv-01977-ACA** |
| | } | |
| **COOSA COUNTY BOARD OF EDUCATION, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Before the court is Defendants' motion for summary judgment. (Doc. 47). Defendants also filed a motion to strike Plaintiff Douglas Keith Warren's response to their statement of facts and his additional undisputed and disputed facts contained in his response brief. (Doc. 60).

Mr. Warren is a Caucasian male. He worked as a special education teacher and assistant softball coach at Coosa Central High School during the 2015-16 school year. In April 2016, the Coosa County Board of Education (the "Board") decided not to renew Mr. Warren's probationary employment. Several weeks later, Superintendent Dennis Sanford and Coosa Central High School Principal Bradley Bouldin placed Mr. Warren on administrative leave until the end of the school year based on reports that Mr. Warren threatened to destroy school property.

Mr. Warren filed this lawsuit alleging that the Board, Mr. Sanford, and Mr. Bouldin discriminated against him because of race and gender. The following claims remain pending: (1) race discrimination, in violation of 42 U.S.C. § 1981, via § 1983, against the Board and Mr. Sanford and Mr. Bouldin in their individual capacities (Count One); (2) gender discrimination, in violation Title VII, against the Board (Count Two); and (3) defamation, in violation of Alabama law, against Mr. Sanford and Mr. Bouldin in their individual capacities (Count Four).[1]

First, the court **DENIES** Defendants' motion to strike the contested portions of Mr. Warren's brief because Defendants are not prejudiced by Mr. Warren's failure to strictly comply with this court's instructions on summary judgment briefing.

Second, the court **GRANTS** Defendants' motion for summary judgment on Mr. Warren's § 1981 and Title VII claims. The court **GRANTS** the motion for summary judgment as to Mr. Warren's claim of race discrimination under § 1981 because Mr. Warren has not presented a prima facie case of race discrimination. The court **GRANTS** the motion for summary judgment as to Mr. Warren's claim of gender discrimination under Title VII because Mr. Warren has not presented evidence from which a reasonable jury could find that the Board discriminated

---

[1] The court previously dismissed Mr. Warren's § 1983 due process claim against the Board. (Doc. 33).

against him because of his gender or that gender was a motivating factor for any alleged adverse employment action.

Because the court will enter judgment as a matter of law in favor of Defendants on all claims over which it has original jurisdiction, the court **WILL DECLINE** to exercise supplemental jurisdiction over Mr. Warren's state law defamation claim and **WILL DISMISS WITHOUT PREJUDICE** the claim pursuant to 28 U.S.C. § 1367(c).

## I. BACKGROUND

In considering a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

In August 2015, the Board hired Mr. Warren, a Caucasian male, as a special education teacher at Central High School for the 2015-16 school year. (Doc. 48-1 at 68–69; Doc. 52-2 at 147–148). Mr. Warren was not certified to teach special education, but the Board was experiencing teacher shortages and needed to fill the position because the school year had already begun, and the Board had exhausted its pool of qualified applicants. (Doc. 48-2 at 68, 76–77). Although Mr. Warren was not initially certified to teach special education, the Alabama State Department of Education granted Mr. Warren an alternative certificate when he enrolled in a special

education master's program with the intent to complete his degree within three years. (Doc. 48-1 at 38, 71–72; Doc. 48-2 at 77–79; Doc. 52-2 at 158). In addition to teaching special education, Mr. Warren served at the assistant coach for the Central High School girls' softball team. (Doc. 48-1 at 120; Doc. 48-3 at 71). Mr. Warren was a probationary, non-tenured employee. (*See* Doc. 48-6 at 2).

During the 2015-16 school year, Defendant Dennis Sanford was the Superintendent of the Coosa County School District. (Doc. 48-2 at 34). Defendant Bradley Boudlin was the Principal at Central High School. (Doc. 48-5 at 1). Rebecca Stallworth was the Assistant Principal and head coach of the girls' softball team. (*Id.*). Andi Wilson was the Board's Special Education Coordinator, and April Dudley was the Assistant Special Education Coordinator. (Doc. 48-2 at 57–58, 62).

Ms. Dudley worked closely with Mr. Warren and oversaw his work because he lacked a special education background. (*Id.* at 58, 62–66). For example, Ms. Dudley reviewed the individualized education programs that Mr. Warren completed for his students. (Doc. 48-1 at 107). According to Mr. Warren, Ms. Dudley often emailed comments and revisions to him, and she "would give [him] a lot of great feedback." (*Id.* at 108).

Sometime in March 2016, Mr. Bouldin and Mr. Warren discussed Mr. Bouldin's son's struggles with standardized tests. (Doc. 48-3 at 46). Mr. Bouldin testified that Mr. Warren empathized and stated that he would not have passed the

Praxis exam if he had not cheated on the test. (*Id.*). Mr. Bouldin does not remember exactly what Mr. Warren said, but Mr. Bouldin got the impression that somehow Mr. Warren had obtained a copy of the test questions or answers. (*Id.*). Mr. Warren denies telling Mr. Bouldin that he cheated on the Praxis or that he took material from the testing room. (Doc. 48-1 at 232–233, 237–38). Mr. Bouldin testified that he did not reprimand Mr. Warren or recommend termination at the time because the school year was almost over. (Doc. 48-3 at 49). Mr. Bouldin testified that he "knew that there would be discussions among administration about who should be retained and who should not among non-tenured teachers," and he "felt that [the situation] would work itself out." (*Id.*).

Several weeks later, Mr. Bouldin, in consultation with Ms. Wilson and Ms. Dudley, recommended to Mr. Sanford that he, in turn, recommend to the Board that it non-renew Mr. Warren's employment for the following school year. (Doc. 48-2 at 60, 93). The record contains no written warnings or evaluations about Mr. Warren's job performance, but Mr. Bouldin testified that he had concerns because Mr. Warren was frequently out of the classroom "having sports discussions" or engaging in other matters. (Doc. 48-3 at 27; *see id.* at 54). Ms. Wilson testified that she had expressed concern to Mr. Bouldin about Mr. Warren's ability to handle his work as a special education teacher given the amount of time he spent on his coaching duties. (Doc. 48-2 at 69–73).

Based on Mr. Bouldin's and Ms. Wilson's reports, Mr. Sanford recommended to the Board that it not renew Mr. Warren's employment. (Doc. 48-4 at 18–19). Consistent with that recommendation, on April 14, 2016, the Board voted to non-renew Mr. Warren's employment for the following school year. (Doc. 48-6 at 2, 7–8). No one gave the Board members a reason for the non-renewal recommendation before the vote. (Doc. 48-4 at 19; 48-6 at 3).

Mr. Bouldin and Ms. Stallworth informed Mr. Warren of the Board's decision on April 20, 2016. (Doc. 48-3 at 75; *see* Doc. 52-2 at 51). According to Mr. Warren, Ms. Wilson told him that the decision to non-renew his employment was not performance based. (Doc. 48-1 at 113). In her deposition, Ms. Wilson testified that she would give Mr. Warren a "good reference as . . . a teacher in general." (Doc. 48-2 at 121). According to Ms. Wilson, Mr. Warren was polite and "at work all the time." (Doc. 48-2 at 121). But Ms. Wilson recommended non-renewal to Mr. Sanford because Mr. Warren still was working toward his special education certification, and Central High School "needed someone who was more knowledgeable in that position." (Doc. 48-2 at 94).

In late April 2016, Mr. Warren met with Mr. Sanford to discuss the Board's decision. (Doc. 48-1 at 110–11). At the end of the meeting, Mr. Sanford told Mr. Warren that he would ask the Board to reconsider its decision to non-renew Mr. Warren's employment. (Doc. 48-1 at 115–116; Doc. 48-4 at 14–15, 35–36). Mr.

Sanford told Mr. Bouldin that he planned to ask the Board to reconsider its vote. (Doc. 48-4 at 36). At that point, Mr. Bouldin shared with Mr. Sanford his concern that Mr. Warren cheated on the Praxis exam. (Doc. 48-3 at 50; Doc. 48-4 at 35–36).

In early May 2016, Ms. Stallworth—with Mr. Bouldin's support and approval—told Mr. Warren that he would no longer be the assistant coach. (Doc. 48-1 at 139; Doc. 48-3 at 81). The next day, Mr. Bouldin and Mr. Sanford met with Mr. Warren and told him that they would not overrule Ms. Stallworth's decision to relieve him as the assistant softball coach. (Doc. 48-1 at 229–30). The topic of conversation then shifted to the allegations that Mr. Warren cheated on the Praxis exam. (Doc. 48-1 at 230; Doc. 48-4 at 34).

Mr. Warren denied telling Mr. Bouldin that he cheated on the Praxis or that he took material from the testing room. (Doc. 48-1 at 232–233, 237–38; Doc. 48-3 at 63). But Mr. Bouldin insisted that during their conversation several weeks before, Mr. Warren had suggested that he "had a copy of a stolen test or somehow had access to the answers." (Doc. 48-3 at 63). Mr. Sanford told Mr. Warren that he had no choice but to "turn him in" to the State Department of Education. (Doc. 48-1 at 233). The record is undisputed that neither Mr. Sanford nor Mr. Bouldin personally reported Mr. Warren's alleged cheating to the State, but someone affiliated with the Board did alert the State Department of Education about the allegation. (Doc. 48-1 at 199; Doc. 48-3 at 9, 48; Doc. 48-4 at 32, 47; Doc. 52-2 at 196).

Several days later, two teachers independently approached Mr. Bouldin to tell him that Mr. Warren had destroyed a computer hard drive when he had been non-renewed at a different school. (Doc. 48-3 at 89–91, 93–94). The teachers were concerned that Mr. Warren might do "something similar" based on their conversations with him. (Doc. 48-3 at 94; *see also* Doc. 48-3 at 90). Mr. Bouldin advised Mr. Sanford about these concerns, and Mr. Sanford told Mr. Bouldin to inform Mr. Warren the following morning that he was being placed on paid administrative leave. (Doc. 48-3 at 98–99, 112–13). Mr. Bouldin did as Mr. Sanford instructed, and when Mr. Warren arrived at the school the next day, Mr. Bouldin and a school resource officer walked Mr. Warren to his classroom to collect his personal belongings before they escorted him off school property. (Doc. 48-1 at 160; Doc. 48-3 at 112). Neither Mr. Bouldin nor Mr. Sanford investigated to find out if Mr. Warren had destroyed property at a previous school, and neither asked Mr. Warren whether the allegation was true before placing him on leave. (Doc. 48-3 at 92–94; Doc. 48-4 at 26–27).

Mr. Warren alleges that Defendants treated him less favorably than three other Board employees: Jodi Pate, Cyndel King, and Jocelyn Marbury. (Doc. 48-1 at 170–72; Doc. 53 at 4–5, 16–17). First, Mr. Warren claims that Ms. Pate had a letter of reprimand in her personnel file and received less favorable feedback, but the Board promoted her into Mr. Warren's position. (Doc. 48-1 at 166, 170; Doc. 53 at 4). Mr.

Warren has not cited, and the court has not located, evidence in the record regarding Ms. Pate's race.

Second, Mr. Warren contends that Ms. King called in a bomb threat and was arrested, but the Board reinstated her to her position. (Doc. 48-1 at 170). Ms. King was a teacher at Coosa Central High School during the 2015-16 school year. (Doc. 48-5 at 2). Near the beginning of the school year, law enforcement issued a warrant for Ms. King's arrest for a bomb threat connected to her cell phone number. (*Id.*). At a sheriff deputy's request, Mr. Bouldin removed Ms. King from her classroom and escorted her to the front of the school to a waiting patrol car. (*Id.*). Based on the initial information from the sheriff's deputy, Mr. Sanford placed Ms. King on administrative leave. (Doc. 48-5 at 2; Doc. 48-6 at 4). Authorities dropped the criminal charges against Ms. King when they confirmed that another individual accessed her cell phone and sent the bomb threat. (*Id.*). Ms. King then returned from administrative leave and shared the exculpatory evidence with Mr. Bouldin. (*Id.*). Mr. Bouldin did not take disciplinary action against Ms. King based on the criminal charge. (Doc. 48-5 at 2). Ms. King is Caucasian. (Doc. 48-6 at 4).

Third, Mr. Warren claims that despite accusations of wrongdoing, the Board took no disciplinary action against Ms. Marbury. (Doc. 48-1 at 172). Ms. Marbury is a tenured employee, and she has worked for the Board for over 20 years. (Doc. 48-6 at 3). During the 2015-16 school year, Ms. Marbury served as the principal at

the Coosa County Career Technical Center. (*Id.*). During the spring of 2016, students complained that Ms. Marbury mismanaged school finances by selling items on school property during the school day. (Doc. 48-6 at 3–4). Mr. Sanford requested that the Board's attorney investigate the allegations. (*Id.* at 4). At the end of the investigation, the Board's attorney found that no disciplinary action was required. (*Id.*). Ms. Marbury is African-American. (Doc. 48-1 at 172).

## II.    DISCUSSION

### 1.    Motion to Strike

Defendants ask the court to strike Mr. Warren's statement of facts contained in his summary judgment response brief because Mr. Warren did not comply with Appendix II of the court's initial order governing requirements for response briefs. (Doc. 60).

With respect to an opposing party's statement of facts, Appendix II requires the non-moving party to set forth the facts in three separate sections: (1) response to movant's statement of facts; (2) additional undisputed facts; and (3) additional disputed facts. (Doc. 41 at 17–18). For each section, the opposing party is to set out the facts in separately numbered paragraphs with a specific reference to the evidentiary record. (*Id.*).

Mr. Warren's statement of facts does not conform to the court's instructions. For example, the section of his brief titled "Response to Movant's Statement"

provides no citations to the evidentiary record, and the facts are not set out in separately numbered paragraphs corresponding to Defendants' undisputed statement of facts.  (*See* Doc. 53).

Defendants also challenge Mr. Warren's "Additional Undisputed Facts" because they claim that the evidentiary citations do not support the facts alleged and his "Additional Disputed Facts" because they claim they are confused by Mr. Warren's failure to include these facts in his response to their narrative statement of undisputed facts.  (Doc. 60 at 3–4).

While true that Mr. Warren did not strictly comply with the requirements of Appendix II, the court is hard pressed to agree with Defendants that they are prejudiced by his failure to do so.  (*See* Doc. 60 at 4).  In their reply brief, Defendants address each of the alleged deficiencies head on.  (*See* Doc. 59 at 2–5).  Moreover, for purposes of ruling on the motion for summary judgment, the court has independently reviewed Mr. Warren's statements of fact, and to the extent they are not supported by the record, the court has not considered them as true for purposes of this opinion.

Accordingly, the court **DENIES** Defendants' motion to strike.

2.    Motion for Summary Judgment

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party,

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318. "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

Before addressing the merits of the arguments raised in Defendants' motion for summary judgment, the court identifies the legal framework that applies to Mr. Warren's § 1981 race discrimination[2] and Title VII gender discrimination claims.

### a. Legal Framework

Section 1981 prohibits intentional discrimination "in private employment on the basis of race." *Johnson v. Ry. Express Agency*, 421 U.S. 454, 465–60 (1975). Title VII prohibits an employer from discriminating against a person based on, among other things, gender. 42 U.S.C. § 2000e-2(a)(1). Generally, claims brought under § 1981 and Title VII "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). For example, a plaintiff may prove both claims through "three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence

---

[2] Mr. Warren alleges that Defendants violated his statutory right to be free from race discrimination under § 1981, but as he must, he asserts the claim via § 1983 because Defendants are state actors. *Butts v. Cnty. of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000) ("[Section] 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981.") (citing *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 731–32 (1978)).

or statistical evidence." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). The only issue in this case is whether Mr. Warren has presented sufficient circumstantial evidence for a reasonable jury to find that Defendants discriminated against him because of his race or gender.[3]

"A plaintiff may raise a reasonable inference of the employer's discriminatory intent through various forms of circumstantial evidence." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Mr. Warren relies on two forms of circumstantial evidence: the test set out in the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the so-called "mixed motive" test discussed in the Eleventh Circuit's decision in *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016). (*See* Doc. 53 at 12–17[4]; *see also* Doc. 55). Although Mr. Warren may rely on a mixed-motive theory to establish his Title VII gender discrimination claims, he may not rely on a mixed-motive theory to prevail on his § 1981 race discrimination claims.

---

[3] Despite Mr. Warren's assertion to the contrary (*see* Doc. 53 at 12), he has presented no direct evidence of discrimination, and the record contains no statistical evidence of discrimination either.

[4] Mr. Warren's brief does not cite *Quigg*. Instead, Mr. Warren relies on a non-binding and out-of-circuit district court decision for the proposition that he may rely on a mixed- motive theory. (Doc. 53 at 12). The court will apply and follow binding precedent from the Eleventh Circuit for purposes of analyzing Mr. Warren's mixed-motive evidence.

Title VII expressly permits a plaintiff to establish liability by "demonstrat[ing] that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *see also Quigg*, 814 F.3d at 1239–40. But "the mixed-motive amendments [to Title VII] do not apply to § 1981 claims." *Mabra v. United Food & Commercial Workers Local Union No. 1996*, 176 F.3d 1357, 1357 (11th Cir. 1999).[5] Thus, for Mr. Warren's § 1981 race discrimination claim, he must present evidence of both a discriminatory motive *and* that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation [for the employment action] is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see Mabra*, 176 F.3d at 1357. In other words, to establish his § 1981 race discrimination claims, Mr. Warren must satisfy his burden under the *McDonnell Douglas* single-motive or pretext test.[6]

---

[5] To the extent the Eleventh Circuit's 2016 decision in *Quigg* conflicts with its 1999 decision in *Mabra*, this court is bound to follow the earlier decision. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000).

[6] The court recognizes that the *McDonnell Douglas* framework is not the only tool for examining evidence of discriminatory intent and that a convincing mosaic of circumstantial evidence may be sufficient to allow a jury to infer that discriminatory intent motivated an employment decision. *Lockheed-Martin Corp.*, 644 F.3d at 1328. In this case though, Mr. Warren has not argued that he can present a convincing mosaic of circumstantial evidence. Instead, as an alternative to his mixed-motive theory, Mr. Warren argues that under the *McDonnell Douglas* analysis, he can demonstrate that Defendants' reasons for their employment decisions were pretextual. (Doc. 55 at 1–2).

14

Under the *McDonnell Douglas* test, "a plaintiff first must make out a prima facie case of discrimination that 'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *Flowers v. Troup Cty., Ga. School Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (quoting *Burdine*, 450 U.S. at 254). To establish a prima facie case of race discrimination under § 1981 or gender discrimination under Title VII, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

If the plaintiff presents a prima facie case, then the burden shifts to the employer to articulate a non-discriminatory basis for the employment action at issue. *Flowers*, 803 F.3d at 1336. If the defendant carries this light burden, then the burden returns to the plaintiff to prove that the employer's stated reason for its conduct is pretext for intentional discrimination. *Id.*

In his amended complaint, Mr. Warren asserts claims for race discrimination under § 1981 and gender discrimination under Title VII, arising from three separate employment actions: (1) the decision to non-renew his employment for the 2016-17 school year; (2) the decision to relieve him of his assistant coaching responsibilities;

and (3) the decision to place him on administrative leave. (Doc. 16 at ¶¶ 13, 25–26).[7] The court's analysis of Mr. Warren's claims will proceed in three parts. First, the court will examine Mr. Warren's § 1981 race discrimination claims under the *McDonnell Douglas* framework. Second, the court will do the same for Mr. Warren's Title VII gender discrimination claims. Third, the court will review Mr. Warren's Title VII gender discrimination claims under the *Quigg* mixed-motive theory.

> b. *Single-Motive McDonnell Douglas § 1981 Race Discrimination Claims Against All Defendants*

For each alleged adverse action, Defendants argue that Mr. Warren cannot establish the first two elements of his prima facie case of § 1981 race discrimination. First, Defendants contend that because Mr. Warren is Caucasian, he is not a member of a protected class. (Doc. 59 at 6–7). Defendants cite no authority to support this argument, and the Supreme Court has held that § 1981 prohibits race discrimination against "any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 288

---

[7] In their brief in support of summary judgment, Defendants state that Mr. Warren challenges two separate incidences of discrimination: being relieved of his assistant coaching duties and being placed on administrative leave. (Doc. 49 at 15). However, in his amended complaint, under the headings for his § 1981 and Title VII claims, Mr. Warren incorporated by reference all factual allegations, which include the Board's decision to non-renew his employment. (*See* Doc. 16 at ¶¶ 25, 28). Mr. Warren's amended complaint is not a model of clarity on the point, but in his brief in opposition to summary judgment, Mr. Warren references his non-renewal and the Board's decision to replace him with a female. Moreover, in both their brief in support of summary judgment and their reply brief, Defendants contend that Mr. Warren has failed to establish that the Board's decision to non-renew his employment was motivated by racial or gender animus. (Doc. 49 at 7; Doc. 59 at 9–10, 14–15). Therefore, out of an abundance of caution, the court analyzes all possible adverse actions.

(1976). Therefore, Mr. Warren is a member of a protected class for purposes of his § 1981 claims.

Second, Defendants contend that Mr. Warren was not qualified for his position because he was not certified to teach special education. (Doc. 59 at 7). According to Defendants, to teach under the alternative certification, the Alabama State Department of Education required Mr. Warrant to enroll in a masters' level program and complete the program, which he never did. (*Id.*). Defendants' position overlooks the undisputed evidence that the State Department of Education granted Mr. Warren an alternative certificate effective through June 30, 2016. (Doc. 52-2 at 158). Mr. Warren's employment was terminated before that date, and until he lost his job, Mr. Warren demonstrated his intent to finish his special education degree within the required three-year period. (Doc. 48-1 at 38–39, 71–72). Therefore, at the time the Board decided to non-renew his employment and at the time he was placed on administrative leave, Mr. Warren met the Board's objective qualifications for his position.

Accordingly, Mr. Warren has established the first two elements of his prima facie case of race discrimination. The court now addresses Defendants' remaining arguments with respect to Mr. Warren's § 1981 race discrimination claims. All Defendants argue that Mr. Warren cannot establish a prima facie case because either the alleged adverse employment decision is not actionable or Mr. Warren has not

shown how Defendants treated him less favorably than similarly situated employees. In addition, Mr. Sanford and Mr. Bouldin argue that they are entitled to qualified immunity.

As explained below, Mr. Warren has not created triable issues of fact regarding Defendants' discriminatory intent sufficient to survive summary judgment. And because Mr. Warren has not shown that Defendants violated his statutory right to be free from race discrimination in the workplace, the individual defendants are immune from Mr. Warren's § 1981 claims.

### i.    Decision to Non-Renew Employment

Defendants have not argued that the decision to non-renew Mr. Warren's employment is not an adverse employment action, and the court finds that it is. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (noting that an "ultimate employment decision," such as termination, constitutes an adverse action for a discrimination claim).

However, Mr. Warren submits no evidence demonstrating that Defendants hired an African-American to fill his teaching position or that Defendants treated Mr. Warren less favorably than other non-tenured African-American employees with respect to non-renewal of employment. Indeed, Mr. Warren advances no argument at all in this regard. (*See generally* Doc. 53). Therefore, Mr. Warren has

not met his burden of raising a presumption of intentional race discrimination with respect to the Board's decision to non-renew his employment.

Accordingly, the court **WILL GRANT** Defendants' motion for summary judgment on Mr. Warren's § 1981 race discrimination claim based on the Board's decision to non-renew his employment.

### ii.     Decision to Remove as Assistant Softball Coach

Defendants argue that Mr. Warren cannot establish a prima facie case of race discrimination based on the decision to relieve him of his coaching responsibilities because that decision is not an actionable adverse employment action. (Doc. 49 at 16; Doc. 59 at 7). The court agrees.

To qualify as an adverse employment action for purposes of a discrimination claim, the action "must in some substantial way alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Crawford*, 529 F.3d at 970. Although a plaintiff need not submit "proof of direct economic consequences in all cases," the adverse action's impact "must have at least a tangible adverse effect on the plaintiff's employment. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Therefore, "to prove adverse employment action" a plaintiff "must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* (emphasis in original).

19

Mr. Warren suffered no financial consequence based on the decision to remove him from his assistant coaching position, and the decision was made at the end of the softball season with few games left. (Doc. 48-1 at 139; Doc. 48-6 at 3). Without more, the court finds that the decision to relieve him of his assistant coaching duties is not a serious and material change in the terms of Mr. Warren's employment, and as such, it does not rise to the level of an adverse action. *See Kidd v. Mando American Corp.*, 731 F.3d 1196, 1203–04 (11th Cir. 2013) (work reassignments resulting in "a loss of supervisory responsibility," but not a loss of pay or benefits, generally does not constitute an adverse employment action).

Accordingly, the court **WILL GRANT** Defendants' motion for summary judgment on Mr. Warren's § 1981 race discrimination claim based on the decision to relieve him of his assistant coaching responsibilities.

### iii.    Decision to Place Mr. Warren on Administrative Leave

Defendants argue that Mr. Warren cannot establish a prima facie case of race discrimination based on the decision to place him on administrative leave because Mr. Warren has not demonstrated that he was he was treated differently than similarly-situated employees. Defendants' argument is persuasive.

As the Eleventh Circuit recently cautioned, "[e]very qualified minority employee who gets fired, for instance, necessarily satisfies the first three prongs of the traditional *prima facie* case." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213,

1223 (11th Cir. 2019). "It is only by demonstrating that her employer has treated 'like' employees 'differently'—*i.e.*, through an assessment of comparators—that a plaintiff can supply the missing link and provide a valid basis for inferring unlawful *discrimination*. *Id.* (emphasis in original). Therefore, a plaintiff relying on the *McDonnell Douglas* burden-shifting framework to establish a race discrimination claim must show that he and his comparators are "similarly situated in all material respects." *Id.* at 1224. In most cases, adequate comparators are those who have been "engaged in the same basic conduct (or misconduct), . . . subject to the same employment policy, guideline, or rules, . . . under the jurisdiction of the same supervisor, . . . and [] share the [same] employment or disciplinary history" as the plaintiff. *Lewis*, 918 F.3d at 1227–28.

Mr. Warren submits that Defendants treated him less favorably than Ms. Marbury, an African-American, because he was placed on administrative leave, but she was not. (*See* Doc. 53 at 5, 16–17).[8] Ms. Marbury is not an adequate comparator. First, Mr. Warren and Ms. Marbury do not share the same employment history. Mr. Warren was first-year, non-tenured teacher. (Doc. 48-1 at 68–69; Doc. 48-6 at 2; Doc. 52-2 at 147–148). Ms. Marbury was a twenty-year tenured Board employee

---

[8] Ms. King cannot be not a proper comparator for Mr. Warren's race discrimination claim because like Mr. Warren, Ms. King is Caucasian. (Doc. 48-6 at 4). Likewise, Ms. Pate cannot be a proper comparator for Mr. Warren's race discrimination claim because he provides no evidence regarding Ms. Pate's race.

who served as a school principal. (Doc. 48-6 at 3). Second, Mr. Warren and Ms. Marbury did not engage in the same basic alleged misconduct. Teachers reported to Mr. Bouldin that based on their conversations with Mr. Warren, they believed Mr. Warren might destroy school property. (Doc. 48-3 at 89–91, 93–94). Students expressed concerns about Ms. Marbury's management of finances, including selling items during the school day on school property. (Doc. 48-6 at 4). In short, there is no genuine dispute about whether Mr. Warren and Ms. Marbury are "sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Lewis*, 918 F.3d at 1228 (citing *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1355 (2015)).

Accordingly, the court **WILL GRANT** Defendants' motion for summary judgment on Mr. Warren's § 1981 race discrimination claim based on the decision to place him on administrative leave.

### iv. Qualified Immunity

Mr. Sanford and Mr. Bouldin also seek summary judgment as on the basis that they are entitled to qualified immunity from Mr. Warren's § 1981, via § 1983, race discrimination claims.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person

would have known." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018).

Mr. Sanford and Mr. Bouldin were performing discretionary functions when they made the personnel decisions at issue because the acts in question "fell within [their] job responsibilities" and within the scope of their authority. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). And Mr. Warren makes no argument to the contrary. (*See generally* Doc. 53).

Therefore, Mr. Warren bears the bears the burden of showing that the individual defendants' conduct violated a statutory right and that the right was clearly established at the time of the conduct. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). As explained above, Mr. Warren has not created triable issues of fact regarding whether Defendants violated his statutory right to be free from race discrimination. Therefore, he has not shown that Mr. Sanford and Mr. Bouldin's conduct violated his rights under § 1981.

Accordingly, the court **GRANTS** Defendants' motion for summary judgment on the basis that Mr. Sanford and Mr. Bouldin are entitled to qualified immunity from Mr. Warren's § 1981, via § 1983, race discrimination claims.

### c. *Single Motive McDonnell Douglas Title VII Gender Discrimination Claims Against the Board*

### i. Decision to Non-Renew Employment

Defendants make no specific argument concerning Mr. Warren's ability to establish a prima facie case of gender discrimination based on the Board's decision

to non-renew his employment, and the court finds that Mr. Warren has presented sufficient evidence on this point. As a male, Mr. Warren is a member of a protected class. Mr. Warren was qualified for his teaching position. *See supra* pp. 17–18. The Board's decision to non-renew Mr. Warren's employment is an adverse action. *See supra* pp. 18–19. And the Board replaced Mr. Warren with Ms. Pate, a female.

Even though Mr. Warren has established a prima facie case, his evidence is insufficient to rebut the legitimate, non-discriminatory reasons for his non-renewal. According to Defendants, Mr. Sanford recommended that the Board non-renew Mr. Warren's employment. Mr. Sanford made his decision based on Mr. Bouldin's and Ms. Wilson's feedback that Mr. Warren was not as attentive to his teaching duties as he should have been and their opinion that the Board needed someone more knowledgeable about special education in the position. (Doc. 48-2 at 69–73, 94; Doc. 48-3 at 27).

Mr. Warren makes no specific argument regarding pretext with respect to the Board's decision to non-renew his employment. Rather, his entire pretext argument consists of the following general statement: "The reasons presented by Defendants have been rebutted and examples of disparate treatment have been provided in order to rebut the 'legitimate reasons.'" (Doc. 53 at 17). From this generic statement the court is unable to determine which evidence Mr. Warren believes demonstrates pretext.

Although not entirely clear, Mr. Warren appears to argue that Defendants' legitimate reasons for recommending non-renewal are pretext because Ms. Wilson told him that the decision was not based on Mr. Warren's performance as a special education teacher. (Doc. 53 at 3). Even if this evidence were sufficient to call into question the truthfulness of the articulated reasons for non-renewal, the record contains no evidence that the reasons are pretext for unlawful discrimination because of Mr. Warren's gender. *Flowers*, 803 F.3d at 1339 ("The burden placed on Title VII plaintiffs to produce additional evidence suggesting discrimination after contradicting their employer's stated reasons is not great, but neither is it nothing."). Notably, no one gave a reason for the non-renewal to the Board members prior to their vote to non-renew Mr. Warren's employment. And Mr. Warren has not argued or shown that the Board accepted a biased recommendation from any individual. Other than the fact that he is male, Mr. Warren submits no other evidence that would support an inference that the Board non-renewed his employment *because* he is a man. Thus, Mr. Warren has not created triable issues of fact regarding whether the Board was influenced by gender bias.

Accordingly, the court **WILL GRANT** Defendants' motion for summary judgment on Mr. Warren's single-motive Title VII gender discrimination claim based on the Board's decision to non-renew his employment.

### ii.      Decision to Remove as Assistant Softball Coach

For the same reasons explained above with respect to Mr. Warren's § 1981 race discrimination claims, the decision to remove him as the assistant softball coach does not constitute an actionable adverse employment action for purposes of his Title VII gender discrimination claim. *See supra* pp. 19–20.

Therefore, the court **WILL GRANT** Defendants' motion for summary judgment on Mr. Warren's single-motive Title VII gender discrimination claim based on the decision to relieve him of his coaching duties.

### iii.      Decision to Place Mr. Warren on Administrative Leave

Defendants argue that Mr. Warren cannot establish a prima facie case of gender discrimination based on the decision to place him on administrative leave because Mr. Warren has not demonstrated that he was he was treated differently than similarly-situated employees. The court agrees.

Mr. Warren argues that the Board treated him less favorably than Ms. Pate, Ms. King, and Ms. Marbury. For the same reasons explained above, Ms. Marbury is not an adequate comparator. *See supra* pp. 21–22. Neither is Ms. Pate or Ms. King.

Mr. Warren claims that the Board treated Ms. Pate more favorably by promoting her into Mr. Warren's teaching position despite having "letters of reprimand" and "letters regarding poor performance in her file." (Doc. 53 at 14).

Mr. Warren cites no admissible evidence in support of this statement. This unsupported generalized claim does not create a question of fact about whether Mr. Warren and Ms. Pate are similarly situated.

Mr. Sanford placed both Mr. Warren and Ms. King on administrative leave upon reports of alleged misconduct. However, Mr. Warren contends that he "led off school property in a humiliating fashion, being paraded in front of students during bus drop off while being escorted by a school resource officer," but Ms. King "was allowed to leave the school discretely." (Doc. 53 at 17). Mr. Warren also argues that Ms. King got her job back after the benefit of an investigation, but he was not allowed to stay in his position. (Doc. 53 at 5).

Ms. King is not an adequate comparator. Ms. King and Mr. Warren are not similarly situated because Mr. Warren had already been non-renewed by the time Mr. Sanford placed him on administrative leave. Therefore, Mr. Sanford, in the exercise of "appropriate business judgment[]," had no reason to give Mr. Warren his job back after any investigation. *See Lewis*, 918 F.3d at 1218.

Mr. Warren and Ms. King also are not similarly situated because they did not engage in the same alleged misconduct. Ms. King faced criminal charges in a different county concerning a bomb threat associated with her cell phone number. (Doc. 48-5 at 2). Mr. Warren's alleged misconduct involved reported threats to destroy school property. (Doc. 48-3 at 89–91, 93–94). Accordingly, Mr. Warren

and Ms. King are not similarly situated in "all material respects." *Lewis*, 918 F.3d at 1218. *See also id.* at 1228 ("An employer is well within its rights to accord different treatment to employees who are differently situated in 'material respects'— *e.g.*, who engaged in different conduct . . . .").

Thus, the Board's treatment of Ms. King does not raise an inference that it intentionally discriminated against Mr. Warren because he is a man.

Therefore, the court **WILL GRANT** Defendants' motion for summary judgment on Mr. Warren's single-motive Title VII gender discrimination claim based on the decision to place him on administrative leave.

### d. Mixed-Motive Title VII Gender Discrimination Claims Against the Board

To survive summary judgment on a mixed-motive claim, a plaintiff must offer "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action." *Quigg*, 814 F.3d at 1239 (quotation marks omitted) (alterations in original). Again, and for the same reasons stated above, the decision to relieve Mr. Warren of his assistant coaching duties is not an actionable adverse employment action. *See supra* pp. 19–20. Therefore, Mr. Warren cannot succeed on a mixed-motive gender discrimination claim with respect to that employment decision. Moreover, with respect to Defendants' decisions to non-renew Mr. Warren's employment and place him on

administrative leave, Mr. Warren has not "presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that [his gender] was a motivating factor" for either decision. *Quigg*, 814 F.3d at 1239.

First, Mr. Warren offers no specific argument regarding circumstantial evidence from which a jury reasonably could conclude that the Board's decision to non-renew his employment was motivated even in part by gender. (*See generally* Doc. 53 at 15–17). Indeed, the record contains no such evidence.

Second, in support of his mixed-motive gender claim based on Mr. Sanford's decision to place him on administrative leave, Mr. Warren claims that gender was a motivating factor because Ms. Marbury was investigated but not put on leave and Ms. King was not escorted out of the school building by a police officer. (Doc. 53 at 16–17). Mr. Warren's evidence falls short of what the Eleventh Circuit has found sufficient to create questions of fact under a mixed-motive theory.

In *Quigg*, the Eleventh Circuit found that four statements from school board members that indirectly evidenced gender discrimination were sufficient to establish a jury issue as to whether gender was a motivating factor in the defendant school board's decision to terminate the female plaintiff's employment. *Quigg*, 814 F.3d at 1241–42. The Eleventh Circuit found that the statements indicated a preference for a superintendent candidate with masculine characteristics and that the board members actually relied on gender in making their decision because the statements

were made during conversations about whether to renew the plaintiff's contract, in close proximity to the vote, and in specific reference to the gender composition of the superintendent's office. *Id.*

Applying *Quigg* in *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358 (11th Cir. 2018), the Eleventh Circuit found that a plaintiff had offered evidence from which a jury could infer that gender was a motivating factor for a pay disparity between her and a male employee. The employer set the male employee's compensation at the midpoint of the compensation range for the position while the employer set the plaintiff's initial salary at the bottom of the range. *Id.* at 1363. In addition, although the plaintiff's prior salary and experience differed from her male colleague's, the Eleventh Circuit concluded that these factors alone could not explain the disparate salary over time when the plaintiff had established herself an effective manager. *Id.* Finally, the record in *Bowen* contained evidence that the employer's managers "were influenced by [gender] bias," that they "took sex into account when considering personnel matters," that they "refused to remedy the disparities," and that they "repeatedly exhibited an unwillingness to treat women equally in the workplace." *Bowen*, 882 F.3d 1363.

The evidence in this case does not rise to the level of *Quigg* or *Bowen*. Other that the fact that Ms. Marbury and Ms. King are women, Mr. Warren offers no

evidence from which a factfinder could reasonably infer that gender bias was a motivating factor behind the decision to put Mr. Warren on administrative leave.

Accordingly, the court **WILL GRANT** Defendants' motion for summary judgment on Mr. Warren's mixed-motive Title VII gender discrimination claim.

## III. CONCLUSION

For the reasons explained above, the court **WILL GRANT** Defendants' motion for summary judgment on Mr. Warren's § 1981 race discrimination claims and Title VII gender discrimination claims. The court **WILL DISMISS** these claims **WITH PREJUDICE**.

The only remaining claim is Mr. Warren's state law defamation claim against Mr. Sanford and Mr. Bouldin. In his amended complaint, Mr. Warren alleges that the court has supplemental jurisdiction over his state law claim pursuant to 28 U.S.C § 1367. (Doc. 16 at ¶ 2). The amended complaint does not allege that the court has original jurisdiction over the defamation claim. Because the court will dismiss all claims over which it has original jurisdiction, the court **WILL DISMISS** Mr. Warren's defamation claim **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

The court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this October 29, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE